UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| VICKI L. BRUMBAUGH, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) Case No. 1:19-cv-082 JD |
| ANDREW M. SAUL, Commissioner of Social Security, | ) |
| Defendant. | ) |

## OPINION AND ORDER

Vicki L. Brumbaugh applied for social security disability insurance benefits, alleging that she is unable to work primarily due to obesity, pain in her lower back and legs, and bilateral rotator cuff tendonitis. Ms. Brumbaugh previously filed applications seeking both disability insurance benefits and supplemental security income and was granted disability for the closed period of September 13, 2010 through October 24, 2014. She was denied benefits after a second application in November 2015. Ms. Brumbaugh filed this appeal, asking the Court to reverse the ALJ's decision and remand for further proceedings based on alleged errors with the residual functional capacity assessment. The Commissioner filed a response in opposition. As explained below, the Court affirms the Commissioner's decision.

### I. Factual Background

Until she stopped working, Ms. Brumbaugh worked as an injection molding machine operator. Ms. Brumbaugh suffers from obesity, status post bilateral shoulder arthroscopy with subacromial decompression, and bilateral rotator cuff tendonitis. The ALJ found these impairments to be severe. The ALJ also found that Ms. Brumbaugh suffered from the non-severe impairment of hypothyroidism. (R. 16-17). Ms. Brumbaugh has a history of back, neck,

1

shoulder, and knee pain for which she regularly received treatment. She underwent arthroscopic decompression and debridement of her right and left shoulders in 2014. She also regularly received injections in her shoulders and left knee for ongoing pain. A consultative examination in 2016 showed reduced range of motion in her shoulders, and the consultative examiner noted that she may benefit from occupational therapy for her shoulder pain.

Ms. Brumbaugh first applied for benefits in 2013. The ALJ issued a favorable decision for the closed period from September 13, 2010 through October 24, 2014, but found that her disability ended as of October 24, 2014. Ms. Brumbaugh applied again for benefits on November 24, 2015, alleging disability beginning February 17, 2010. The claim was denied initially and upon reconsideration, and Ms. Brumbaugh requested a hearing. The hearing was held on August 30, 2017. The ALJ issued a new decision on February 22, 2018. In that decision, the ALJ made the following residual functional capacity:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she can occasionally reach overhead bilaterally; frequently climb ramps and stairs; frequently balance, stoop, kneel, and crouch; occasionally crawl; and never climb ladders ropes or scaffolds.

(R. 17-18). Finding that Ms. Brumbaugh could have performed other work in the economy, the ALJ found that she was not disabled. The Appeals Council declined review, and Ms. Brumbaugh filed this action seeking judicial review of the Commissioner's decision.

## II.     Standard of Review

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III.    Standard for Disability

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to

determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;
3. Whether the claimant's impairment meets or equals one listed in the regulations;
4. Whether the claimant can still perform past relevant work; and
5. Whether the claimant can perform other work in the community.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

## IV. Discussion

Ms. Brumbaugh offers three arguments in support of reversal. First, she argues that the ALJ erred by failing to consider the impact her obesity had on her RFC. Second, Ms. Brumbaugh argues that the ALJ failed to properly account for and weigh medical opinions. Finally, she argues that the ALJ overemphasized her daily activities in assessing her subjective symptoms. The Court finds that the ALJ did not err in these areas and therefore affirms the Commissioner's decision.

### A. Obesity

First, Ms. Brumbaugh argues that the ALJ failed to account for her obesity when determining her RFC. At step two, the ALJ found that Ms. Brumbaugh's obesity qualified as a severe impairment. (R. 17). The ALJ then discussed her obesity at step three, noting that Ms. Brumbaugh's BMI at the time of the hearing was 40.35, which is classified as obesity. (R. 17). The ALJ then discussed that there is no listing for obesity. He cited Sections 1.00(Q) and 3.00(I) of Appendix 1, and found that her obesity, singularly or in combination with her other impairments, "is not of the severity to meet or equal the criteria of any impairment listed in Appendix 1." (R. 17). The ALJ then stated that he "considered the effects of the claimant's obesity in reducing the claimant's residual functional capacity as described below pursuant to SSR 02-01p." (R. 17). In the RFC determination, the ALJ stated that many of Ms. Brumbaugh's visits with her primary care physician "focused on [her] weight management efforts and did not even mention [her] musculoskeletal issues as being ongoing areas of concern." (R. 20).

Under Social Security Ruling 02-1p, 2002 SSR LEXIS 1, Ms. Brumbaugh's BMI of 40.35 is considered Level III obesity, or extreme obesity, which is the highest level of obesity. *See* SSR 02-1p, 2002 SSR LEXIS 1, 2002 WL 34686281, at *2 (Sept. 12, 2002). However, SSR

02-1p clarifies that "[t]hese levels describe the extent of obesity, but they do not correlate with any specific degree of functional loss." *Id.* The ALJ should consider whether the obesity causes any functional limitations and explain the conclusion in the RFC. 2002 SSR LEXIS 1, [WL] at *6-7.

The Seventh Circuit has ruled that the ALJ must "factor in obesity when determining the aggregate impact of an applicant's impairments." *Arnett v. Astrue*, 676 F.3d 586, 593 (7th Cir. 2012) (citing *Martinez v. Astrue*, 630 F.3d 693, 698-99 (7th Cir. 2010); *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000)); *Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir. 2004) (finding that the ALJ erred by not explaining what consideration he gave to the claimant's obesity). However, a failure to discuss obesity in the RFC determination may be harmless error if the ALJ adopted limitations suggested by physicians who either were aware of or discussed the claimant's obesity. *Arnett*, 676 F.3d at 593 (citing *Prochaska v. Barnhart*, 454 F.3d 731, 736-37 (7th Cir. 2006); *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004)).

Ms. Brumbaugh argues that the RFC includes limitations that "def[y] logic" considering her obesity. [DE 16 at 12]. She then speculates as to the areas in which her obesity may cause pain and difficulty. Specifically, Ms. Brumbaugh argues that the ALJ erred in finding that she could occasionally crawl. She does not cite to any medical evidence in the record that would support an inability to complete the abilities as listed in the RFC. Moreover, no medical opinions opined that she would have further functional limitations as a result of her obesity. The state agency physicians, to whom the ALJ gave great weight, opined that Ms. Brumbaugh would be able to sustain light work. Ms. Brumbaugh does not cite to any evidence that would contradict this finding, but rather speculates as to what difficulties her obesity may cause her (such as an inability to crawl). Such speculation cannot stand in place of facts, and as such, the ALJ properly

6

found that she could sustain light work. The ALJ discussed Ms. Brumbaugh's obesity at step two and three, as well as discussed the lack of functional limitations provided by the treating physician at step four as required by the rulings.

Moreover, even if Ms. Brumbaugh had provided medical evidence confirming her inability to crawl due to her obesity, this would still be harmless error. All of the jobs identified by the VE at step five do not require any crawling or crouching. (R. 21). DOT Nos. 302.685-010, 706.684-022, 920.687-122. Therefore, even if the decision was remanded due to Ms. Brumbaugh's alleged difficulties with crawling, it would not provide new results, as the occupations described by the VE do not require any crawling. "No principle of administrative law or common sense requires [a reviewing court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989).

**B.     Medical Opinion Evidence**

Ms. Brumbaugh alleges that the ALJ erred in giving the opinion of nurse practitioner Jessica Sleesman little weight. Ms. Sleesman wrote a letter on October 10, 2016, in which she stated that Ms. Brumbaugh has a long history of back and shoulder pain. She stated that Ms. Brumbaugh is no longer able to see orthopedics due to insurance, and that her condition "is where she has chronic pain with acute exacerbations of severe pain." (R. 549). She opined that sitting for long periods would cause "acute exacerbation," and that her prognosis is poor. (R. 549). Finally, she stated that Ms. Brumbaugh's condition "appears … chronic and progressive." (R. 549). The ALJ gave this letter little weight, finding it "vague, speculative, and conclusory." (R. at 20). The ALJ also noted that it did not cite to any relevant supporting medical evidence, nor did it specify any functional limitations or capabilities. (R. at 20).

7

Ms. Brumbaugh describes Ms. Sleesman as an "effective primary care doctor." [DE 16 at 14]. However, Ms. Sleesman is a nurse practitioner, which at the time of Ms. Brumbaugh's claim, is not considered an acceptable medical source. While a nurse practitioner is an acceptable medical source for claims filed on or after March 27, 2017, Ms. Brumbaugh's claim was filed on November 24, 2015. Therefore, a nurse practitioner is not an acceptable medical source for her claim. 20 C.F.R. § 404.1502. She is not an "effective primary care doctor," as Ms. Brumbaugh claims in an attempt to make her sound like an acceptable medical source.

Regardless, a nurse practitioner's medical opinion should still be evaluated and discussed. However, Ms. Sleesman's letter is not a medical opinion. "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. 404.1527(a)(1). "The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion." 20 C.F.R. § 404.1527(c)(3). Ms. Sleesman's letter failed to include any functional limitations and failed to back up her speculation with any medical evidence in the record. The ALJ did not err in giving Ms. Sleesman's letter little weight, finding it vague, speculative, conclusory, and failing to cite to medical evidence or to specify functional limitations.

Ms. Brumbaugh argues that the ALJ's decision gives Ms. Sleesman's letter little weight on hyptertechnical grounds, as Ms. Sleesman's letter indicates that Ms. Brumbaugh's condition is chronic and not improving. However, as the ALJ noted, Ms. Sleesman does not back this up

with medical evidence, nor does she provide any functional limitations in her letter. The ALJ did not err in giving Ms. Sleesman's letter little weight, as he supported his decision with substantial evidence. Ms. Brumbaugh then argues that due to Ms. Sleesman's letter, sedentary work would be out of the question. Ms. Sleesman opined that [s]itting for long periods of time will cause acute exacerbation." (R. 549). However, as discussed above, the ALJ properly gave this opinion little weight. Regardless, the ALJ did not limit Ms. Brumbaugh to sedentary work. Rather, the ALJ found that Ms. Brumbaugh could perform light work, which would require less sitting. (R. 17). The ALJ properly gave Ms. Sleesman's letter little weight and supported his RFC determination with substantial evidence.

Ms. Brumbaugh also alleges that the ALJ erred in weighing the opinion of consultative examiner Carolyn Greer, M.D. More specifically, Ms. Brumbaugh argues that Dr. Geer's examination supported Ms. Sleesman's letter. Ms. Brumbaugh also argues that the ALJ ignored evidence and failed to include limitations for left hand fingering.

Dr. Greer examined Ms. Brumbaugh in February 2016. (R. 494). She noted that Ms. Brumbaugh had pain from overusing her shoulders and required injections and pain medication to continue to function. Ms. Brumbaugh also reported walking "forever" in an attempt to lose weight and requires shots in her left knee to do so. (R. 494). Dr. Greer reported that Ms. Brumbaugh could walk for half a block, stand for thirty minutes, and climb one flight of stairs. Further, Dr. Greer found that Ms. Brumbaugh could do fine motor skills repetitively, although Ms. Brumbaugh did report that after a while three fingers on her left hand go numb. (R. 495-96). Dr. Greer found that she was able to walk on heels, toes, tandem walk, and squat. (R. 497). Ms. Brumbaugh showed normal strength and reflexes in all areas, with normal sensory system outside of numbness in her left index finger tip. (R. 497-98). Ms. Brumbaugh had limited range

of motion in her shoulders, but she showed normal range of motion in all other areas. (R. 499). Finally, Dr. Greer suggested that Ms. Brumbaugh may benefit from occupational therapy for her shoulders, that her broken left leg appeared resolved, and that she may have nerve damage to her left arm. (R. 500).

Ms. Brumbaugh does not explain which of Dr. Greer's findings were consistent with Ms. Sleesman's letter. On the contrary, none of Dr. Greer's findings appear to match up with Ms. Sleesman's vague letter. Ms. Brumbaugh's argument here is woefully underdeveloped, and a skeletal argument does not preserve a claim. *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).

As for Ms. Brumbaugh's claim that the ALJ should have provided a left hand fingering limitation in the RFC, the Court is unpersuaded. Dr. Greer found that Ms. Brumbaugh could perform finer motor skills, although noted that Ms. Brumbaugh complained of numbness over time, but also noted that she could pick up a coin, button a shirt, and tie shoes. (R. 19, 495, 498). Ms. Brumbaugh's only sensory deficit was numbness in her index finger. Ms. Brumbaugh has failed to explain how occasional numbness in three of her left hand fingers would result in any fingering limitations for her left hand. Dr. Greer's report showed that Ms. Brumbaugh could perform all of the fine motor skills asked of her without issue, despite complaining of numbness in her index finger. Therefore, the ALJ supported his RFC decision with substantial evidence when he found that no fingering limitations were required.

## C. Subjective Symptoms

Finally, Ms. Brumbaugh argues that the ALJ erred in weighing her daily activities while evaluating her subjective symptoms. An ALJ's subjective symptom analysis is given special deference so long as the ALJ explains his reasoning and it is supported by the record. The Court

will not overturn an ALJ's subjective symptom analysis unless it is "patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (internal quotations omitted); *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015). The claimant bears the burden of demonstrating that an ALJ's subjective symptom evaluation is patently wrong. *See Horr v. Berryhill*, 743 F. App'x 16, 19–20 (7th Cir. 2018). The regulations require the ALJ to look at a variety of factors in evaluating a claimant's symptoms, one of which is daily activities. 20 C.F.R. § 404.1529(c).

Here, the ALJ offered multiple reasons in support of his evaluation. Ms. Brumbaugh takes issue with only one: her daily activities. As to that single issue, the Court agrees that that factor adds little if any weight to the ALJ's analysis. But that falls well short of establishing that the ALJ's evaluation was patently wrong in light of the rest of the ALJ's explanation, none of which Ms. Brumbaugh addresses. The Court thus cannot find that the ALJ committed reversible error in this respect.

In evaluating Ms. Brumbaugh's daily activities, the ALJ noted that Ms. Brumbaugh testified that she takes care of her two-year-old granddaughter for six hours every day. (R. 18). Ms. Brumbaugh testified to playing with her granddaughter, feeding her, and watching television with her. (R. 18). Ms. Brumbaugh also was capable of managing her personal care with breaks. (R. 18). The ALJ also stated that she has "continued to perform activities that are consistent with basic work functions, including driving a car, making meals, and babysitting her young granddaughter for six hours each day." (R. 20). The ALJ then stated that "[t]his level of functioning suggests that the claimant's impairments may not be as debilitating as the claimant alleges." (R. 20).

Ms. Brumbaugh argues that this analysis was improper because it equated her ability to perform basic activities with an ability to work full time.[1] The Seventh Circuit has cautioned that a person's ability to perform daily activities does not necessarily translate to an ability to work full-time, especially if the daily activities can only be done with significant limitations. See *Bjornson v. Astrue*, 671, F.3 640, 647 (7th Cir. 2012); *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011); *Gentle v. Barnhart*, 430 F.3d 865, 867–68 (7th Cir. 2005). Daily activities are a proper factor for an ALJ to consider, though, and when those activities are not consistent with a claimant's testimony about their limitations, an ALJ can take that into account. *Pepper v. Colvin*, 712 F.3d 351, 368 (7th Cir. 2013).

Here, in stating that Ms. Brumbaugh's activities were "consistent with basic work functions," the ALJ came very close to drawing the inference frowned on by *Bjornson*, and may have crossed that line. Perhaps the ALJ meant to make only the more modest point that those activities suggest an ability to perform some tasks, not that they equate to an ability to work full time, *see Green v. Saul*, 781 F. App'x 522, 527 (7th Cir. 2019) (holding that an ALJ permissibly found that the claimant's "engagement in these activities showed that, with some limitations, she could do some work"), though the language is ambiguous. But even then, the activities the ALJ cited offer little support for that finding. The first two activities—driving a car and making meals—do not show an ability to work, particularly in the limited fashion Ms. Brumbaugh

---

[1] Ms. Brumbaugh also argues in this respect that the ALJ erred by failing to acknowledge her statements that activities make her symptoms worse. That argument misstates the record, though, as the ALJ's decision repeatedly acknowledged evidence about how activity affected her condition. (R. 18 ("she experiences pain in her left arm if she tries to do too much"), ("her left arm 'catches' periodically when she reaches for something"), ("pain in her shoulders and neck increases with activity including vacuuming or texting for extended periods"), ("she can manage her personal care, but she needs to take breaks"), R. 19 ("The claimant complained of shoulder pain again in January 2016 after putting up Christmas lights."), ("The claimant complained of shoulder pain when she 'overuses' her shoulders.")).

performed them. The third activity—taking care of a small child on her own for six hours a day—does indicate at least a minimum level of function, but the ALJ never specified how he viewed the demands of that activity as inconsistent with Ms. Brumbaugh's claimed limitations.

Ms. Brumbaugh's argument falls short, however, because it reads as if this was the only reason the ALJ gave for evaluating her testimony. An ALJ's findings need not be perfect, they just must not be patently wrong. *Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012) (affirming the ALJ's credibility finding even though it "was not perfect," as despite the decision's shortcomings, it adequately evaluated the claimant's testimony); *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (affirming the ALJ's credibility determination even though only one of the three reasons the ALJ offered was valid); *Kittelson v. Astrue*, 362 F. App'x 553, 557 (7th Cir. 2010) ("The ALJ's adverse credibility finding was not perfect. But it was also not 'patently wrong.'"). Even finding that one or more of the reasons the ALJ gave was erroneous does not mean that the ALJ's finding as a whole was patently wrong. In *Kittelson*, for example, the Seventh Circuit agreed that the ALJ erred in evaluating the claimant's household activities, but affirmed the ALJ's decision because the ALJ provided another valid reason for the credibility finding. 362 F. App'x at 557–58. And in *McKinzey*, the Seventh Circuit noted that the ALJ's credibility determination "was not without fault," and that two of the three reasons the ALJ offered were unsupported. 641 F.3d at 890–91. But because the third reason the ALJ offered adequately support the finding, the Seventh Circuit affirmed the ALJ's decision. *Id.*

Here, the ALJ did not rely solely on Ms. Brumbaugh's daily activities; he wrote an entire paragraph explaining why he did not find that her subjective symptoms supported limitations beyond those included in the RFC. Ms. Brumbaugh's brief does not address any of the other reasons the ALJ offered, nor has she made any attempt to argue that those reasons are

insufficient to affirm the ALJ's findings. She has thus failed at the outset to show that the ALJ's finding was patently wrong, as is required to reverse the decision. In any event, even aside from the waiver as to those other grounds, the Court is satisfied based on its own assessment of the record that the ALJ has provided sufficient reasons to justify his findings.

The ALJ first noted that Ms. Brumbaugh had received "routine conservative care such as medication and injection therapy," and that those treatments had been able to control her symptoms. (R. 20). That explanation is supported by the record and by the ALJ's decision. As the ALJ noted, Ms. Brumbaugh had undergone surgeries on both of her shoulders before the period under consideration in this case. After those surgeries, doctors found that she had "minimal discomfort" in one shoulder and "full range of motion and full strength" in her other, leading an ALJ in a previous application to conclude that Ms. Brumbaugh was no longer disabled by that time. (R. 19). Thereafter, during the period at issue in this case, Ms. Brumbaugh periodically complained during her office visits of pain in her shoulders or knee, for which she would receive injections. But the record suggested that those injections and the medications Ms. Brumbaugh took were generally able to control her symptoms, as the ALJ found, and subsequent office visits often did not note complaints of pain. (*See* R. 507 ("[Patient] has tried Gabapentin and she find[s] it works[.]"), 556 ("The pain is relieved with cortisone inj[ections].")).

The ALJ also observed that "many of the claimant's visits with her primary doctor focused on the claimant's weight management efforts and did not even mention the claimant's musculoskeletal issues as being ongoing areas of concern." (R. 20). Again, this explanation is supported by the record. Ms. Brumbaugh had many doctors visits during this period that addressed only routine issues, such as weight loss, mole removal, or other issues unrelated to her claimed disability. (R. 337, 343, 345, 353, 492, 509). If Ms. Brumbaugh did not mention

complaints of pain on those occasions even when she was already in her doctor's office, that is an indication that she was not in fact experiencing severe, ongoing pain that would keep her from working.[2] The ALJ was entitled to rely on that factor in support of his finding.

These reasons provide sufficient support for the ALJ's evaluation of Ms. Brumbaugh's statements. They allowed the ALJ to find that Ms. Brumbaugh's condition was adequately—though not completely—controlled to the extent that she could engage in the activities outlined in the RFC. Thus, even assuming that the ALJ's discussion of Mr. Brumbaugh's daily activities added no weight to the analysis, the Court cannot find that the ALJ's finding was patently wrong. Accordingly, the Court finds that the ALJ's decision was supported by substantial evidence, so the Court must affirm that decision.

## V.     Conclusion

The Court AFFIRMS the Commissioner's decision. The Clerk is DIRECTED to enter judgment accordingly.

SO ORDERED.

ENTERED: February 4, 2020

/s/ JON E. DEGUILIO<br>Judge<br>United States District Court

---

[2] The ALJ's decision also noted that there were significant periods during which Ms. Brumbaugh had not sought any medical treatment at all. The ALJ explained that he considered her alleged inability to afford treatment during that time, but that she had not shown that she had pursued all possible resources, such as clinics or public assistance agencies. It is not clear what the ALJ based that statement on, as he did not inquire at the hearing whether Ms. Brumbaugh had pursued those resources. But as just discussed, the ALJ also noted that Ms. Brumbaugh did not even mention her complaints of pain on many occasions when she was already in her doctor's office, and that omission cannot be explained by finances. Her failure to seek treatment on those occasions supports the ALJ's decision even without further noting that she went a year without visiting a doctor. *See Hoyt v. Colvin*, 553 F. App'x 625 (7th Cir. 2014) (finding that the ALJ's credibility finding was adequately supported by other reasons, even though the ALJ also relied in part on the claimant's failure to seek treatment but didn't inquire as to why not).